IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PEDRO NATIVIDAD YBARRA, III, #A0189542, | ) ) | CIV. NO. 20-00167 LEK-WRP |
| | ) | ORDER DISMISSING COMPLAINT |
| Plaintiff, | ) | WITH LEAVE TO AMEND AND |
| | ) | DENYING MOTIONS |
| vs. | ) | |
| | ) | |
| CAROLINE MEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DENYING MOTIONS

Before the court is pro se Plaintiff Pedro Natividad Ybarra, III's prisoner

civil rights Complaint.  ECF No. 1.[1]  Ybarra alleges that Defendants Hawaii

Department of Public Safety ("DPS") and Halawa Correctional Facility ("HCF")

prison officials[2] violated his civil rights by denying him surgery with deliberate

indifference to his health and safety.

For the following reasons, Ybarra's Complaint is DISMISSED with leave

---

[1] Numbering and pagination used for filed documents by the Federal Judiciary's Case Management/Electronic Case Files ("CM/ECF").

[2] Ybarra names DPS Corrections Health Administrator Dr. Caroline Mee and Director Nolan Espinda; HCF Warden Scott Harrington, administrators Marieta Momi`i, Debra Karraker, Tina Agaran, Gavin Takenaka, and Wesley Munn; HCF physicians Deane Hatakeyama, Sisar Paderes, Miriam Chang, Barney Toyama, and John Frauens, and Nurse Practitioner ("NP") Courtney Tanigawa in their official and individual capacities.

granted to amend pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a).

Ybarra's Motion for Leave to Amend, ECF No. 4, and "Motion for Court to Allow Counts 8 thru 14 to be Heard when Statute of Limitation has Expired," ECF No. 5, are DENIED.

## I. <u>STATUTORY SCREENING</u>

The court is required to screen all prisoner pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam) (citation omitted). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

2

(citation omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. If a claim or complaint cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[3]

Ybarra sent this action to court for filing on April 14, 2020.  He asserts two

separate sets of claims.  The first set details incidents that allegedly took place at

HCF from April 2019 to the present, *see* ECF No. 1 at #11-#17; the second set of

claims relates incidents that allegedly occurred between 2013-2016, during a

previous incarceration at HCF.

### A.     **2019 Claims**

Ybarra entered HCF on April 3, 2019, on a parole violation.  He

immediately informed HCF medical staff about his severe pain in his lower back,

that allegedly resulted from his assault by another inmate in December 2013.  *See*

Compl., ECF No. 1 at #11- #15.  Ybarra has been prescribed pain medication since

his return to HCF to address this problem.  Dr. Hatakeyama examined Ybarra on

June 12, July 13, and December 19, 2019, and apparently recommended an MRI[4]

scan to determine the best course of treatment.[5]  *See id.* at #13.  Ybarra told Dr.

Hatakeyama that he was claustrophobic and needed a sedative before having an

---

[3] Ybarra's facts are accepted as true and construed in the light most favorable to him.  *See*
*Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] MRI stands for magnetic resonance imaging, which produces detailed images of organs
and tissues.  https://www.medicalnewstoday.com/articles/146309.

[5] Ybarra does not explicitly allege that Dr. Hatakeyama ordered the scan; he suggests that
a neurosurgeon may have done so.  *See* ECF No. 1 at #15 (stating, "and no MRI's [sic] taken that
my neurosurgeon needs").

MRI.

Ybarra was scheduled for two MRI scans, but he refused to participate in either because he was not given anything to address his claustrophobia. At the second visit, Karraker, who schedules off-site clinical visits for inmates, told Ybarra that he "better get in the machine and take the MRI's [sic]" if he wanted back surgery. *Id.* at #14. Ybarra refused.

Ybarra then filed grievances regarding his back pain, untreated claustrophobia, and alleged denial of surgery. Defendants Momi'i denied his first step grievance, Agaran denied his second step grievance, and Takenaka denied his third step grievance. *Id.* at #15-#17. Ybarra alleges that Warden Harrington is ultimately responsible because he knew or should have known about the denial of surgery as HCF Warden. Finally, Ybarra wrote DPS Corrections Health Administrator Dr. Mee, to inform "her of the lack of adequate medical care" that he has allegedly received at HCF. *Id.* at #11. She did not respond.

Ybarra alleges that Dr. Mee, Warden Harrington, Dr. Hatakeyama, NP Karraker, Momi'i, Agaran, and Takenaka have violated his rights by delaying his back surgery, so that he will be paroled before it can be scheduled. He alleges their "non-curative treatment," has left him in constant pain, and his pain medication is meant "to hide my symptoms [and] has left me a victim of addiction." *Id.*

**B.      Claims Alleged to have Occurred between 2013-2016**

Ybarra claims that he was assaulted by another inmate on December 6, 2013.

*Id.* at #18.  He transferred to HCF in April 2014, where he was treated by Drs.

Paderes, Chang, Toyama, Frauens, and NP Tanigawa.  *See id.* at #18-#24.  He

alleges that they would examine him, note that he had no broken bones, and

prescribe him pain medication.  He had back surgery during this period, but he

alleges that he required additional surgeries.  In 2015 Ybarra wrote former DPS

Corrections Health Administrator Mun regarding this alleged lack of medical care.

He also filed grievances, but former HCF Warden Espinda allegedly ignored them.

Ybarra was paroled in April 2016.

After Ybarra was released on parole, he became addicted to medication

prescribed by a pain management physician, and is, therefore, "a victim of the

opioid epidemic."  Mot., ECF No. 5, at #45.  He says that he is now sober, but

believes his addiction should toll the applicable statute of limitations.

Ybarra labels these claims "Deliberate Indifference," but alleges only

negligence.  *Id.* at #18-#24.  He seeks compensatory and punitive damages,

additional surgery, and expungement of his felony record.  *Id.* at #25.

## III. <u>DISCUSSION</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

### A.     **Deliberate Indifference**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized

7

standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

A prison official violates the Eighth Amendment when he acts with "deliberate

indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511

U.S. 825, 828 (1994).

"To establish an Eighth Amendment violation, a plaintiff must satisfy both

an objective standard—that the deprivation was serious enough to constitute cruel

and unusual punishment—and a subjective standard—deliberate indifference."

*Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds*

*by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  To establish the first prong,

"the plaintiff must show a serious medical need by demonstrating that failure to

treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096

(9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference

prong, a plaintiff must show "(a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need and (b) harm caused by the indifference."

*Id.*  "Indifference may appear when prison officials deny, delay or intentionally

interfere with medical treatment, or it may be shown by the way in which prison

physicians provide medical care." *Id.* (internal quotations omitted).

8

### 1.     *Dr. Hatakeyama and Karreker*

At screening, the Court assumes that Ybarra's allegation of having suffered severe pain that was grave enough to require medical attention from Dr. Hatakeyama and a neurosurgeon, and to be sent for an MRI twice, sufficiently alleges an objectively serious medical need.  *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Ybarra fails, however, to allege sufficient facts to demonstrate that Dr. Hatakeyama or Karraker acted with "deliberate indifference" to his serious medical needs.  *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007).  Karraker's only connection to his claims was to schedule Ybarra's MRI appointments and tell him to comply with the MRI if he wanted back surgery.  He does not allege when this occurred, or that she had the authority to prescribe him a sedative, or deny him an MRI, or provide him surgery.  These facts are insufficient to show that Karraker acted with deliberate indifference to Ybarra's serious medical need.

"Deliberate indifference is a high legal standard."  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).  Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and

differences of opinion over what medical treatment or course of care is proper, are insufficient to constitute an Eighth Amendment violation. *Gamble*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Ybarra alleges that Dr. Hatakeyama examined him and treated his pain at least three times. He also apparently met with a neurosurgeon, although he provides no details about this. Ybarra fails to assert *when* he met with Dr. Hatakeyama or *what* transpired during these examinations. He does not specifically allege that Dr. Hatakeyama ordered the MRIs or, having done so, refused to prescribe him a sedative, failed to explain other possible techniques to relieve his claustrophobia during the scan. Even assuming that Dr. Hatakeyama ordered the MRIs and failed to authorize a sedative to relieve Ybarra's claustrophobia, this alone does not show that Hatakeyama acted with deliberate indifference to Ybarra's serious medical needs. Ybarra does not say what he and Dr. Hatakeyama discussed regarding his need for surgery, or whether they discussed other ways to address Ybarra's claustrophobia. Dr. Hatakeyama or the MRI technician may have offered alternative methods for dealing with Ybarra's claustrophobia, such as earphones to suppress the noise, music, television, or using an upright or open MRI scanner if available. Because Ybarra says that he is no

longer addicted to opioids, Dr. Hatakeyama may have made a reasoned medical decision not to prescribe a sedative for Ybarra and risk renewed addiction, or for many other reasons. This would be a difference of opinion as to the proper course of care and medical treatment, not an actionable Eighth Amendment claim.

Ybarra provides insufficient facts to plausibly infer that Dr. Hatakeyama was deliberately indifferent to his serious medical needs when he allegedly denied him a sedative before the MRIs were taken. To state a colorable Eighth Amendment claim, Ybarra must include "further factual enhancement," *Iqbal*, 556 U.S. at 678, that demonstrates Dr. Hatakeyama's subjective and "purposeful act or failure to respond to [his] pain or possible medical need," and the "harm caused by [this] indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). Ybarra's Eighth Amendment claims against Dr. Hatakeyama and Karraker fail to state a claim and are DISMISSED with leave granted to amend.

### 2. Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa

Ybarra explicitly alleges that Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa were negligent when they allegedly failed to provide him adequate medical care in 2014-2016. Deliberate indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence,

11

does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."), quoting *McGuckin*, 974 F.2d at 1059.

Accepting that Ybarra intended to assert deliberate indifference rather than negligence, however, he alleges no facts suggesting that these Defendants were deliberately indifferent to his injuries by "knowing of and disregarding an excessive risk to his health and safety." *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678. To the contrary, Ybarra's facts show that Defendants, four physicians including an orthopedist, and a nurse practitioner, regularly examined him between April 2014 and April 2016, prescribed him pain medication, and approved surgery. These facts do not indicate that they were "subjectively aware that serious harm [was] likely to result from a failure to provide" him additional surgery. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002). Rather, it appears that Ybarra disagreed with these medical providers' decision that he required no further surgery.

Ybarra fails to state a colorable claim for deliberate indifference against Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa and claims against them are DISMISSED with leave granted to amend.

12

### 3.     *Supervisory Liability: DPS Health Administrators Dr. Mee and Mun, and HCF Wardens Harrington and Espinda*

"Vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," to plead a plausible claim for relief.  *Iqbal*, 556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding supervisor is liable under § 1983 only on a showing of personal involvement in the constitutional deprivation or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation).  "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  That is, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right.  *Id*. at 683.  Supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).

Thus, to state a claim against a supervisor, a plaintiff must allege that the supervisor "participated in or directed the violations, or knew of the violations and

13

failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991); *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Although Ybarra wrote DPS Health Administrators Dr. Mee and Mun about the alleged denial of surgery or other medical care, he does not explain what role they played in Drs. Hatakeyama, Paderes, Chang, Toyama, Frauens, or NP Tanigawa decisions regarding Ybarra's medical care or need for surgery. He does not allege that they failed to train these medical providers or instituted an unconstitutional policy that prevented them from providing Ybarra surgery. "[A] defendant may not be held liable under § 1983 merely because [they] had certain job responsibilities." *Hernandez v. Aranas*, 2020 WL 569347, at *4 (D. Nev. Feb. 4, 2020) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Ybarra alleges that Warden Harrington "is responsible for systamatic [sic] lapses in the screening of my grievances, even if he delegates certain of these administrative responsibilities elsewhere, he is still responsible." Compl., ECF No. 1 at #12. He suggests the same claim against ex-Warden Espinda. *Id.* at #19. An individual's "general responsibility for supervising the operations of a prison is

14

insufficient to establish personal involvement," however. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  To the extent Ybarra alleges that Harrington or Espinda failed to prevent or investigate allegedly systematic problems with HCF's grievance procedures or policies, he has no constitutional right to a prison grievance system.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Alleged violations of a state procedure do not give rise to § 1983 claims.  *Silva v. Gregoire*, 2007 WL 1814073 at *6 (W.D. Wash. 2007).  He also points to no policy or procedure that these wardens implemented that unconstitutionally denied him medical care.

As before, Ybarra fails to include sufficient "factual enhancement" to show how, or to what extent, Dr. Mee, Warden Harrington, or former Warden Espinda may be held personally liable for any constitutional injury.  *See Iqbal*, 556 U.S. at 676-77; *Jones v. Comty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

Ybarra's claims against Health Administrators Dr. Mee and Mun, and Wardens Harrington and Espinda are DISMISSED with leave granted to amend.

## B.    Due Process:  Grievances

Ybarra alleges that Defendants Momi'i, Agaran, and Takenaka were

deliberately indifferent when they denied his grievances and appeals in 2019 regarding the alleged denial of surgery.  He complains that Wardens Harrington and Espinda failed to properly monitor the HCF grievance process.  He fails to allege any facts to support their personal involvement in an Eighth Amendment violation, however.  These claims are more properly alleged under the Due Process Clause of the Fourteenth Amendment, although Ybarra fails to show a violation of that provision.

As noted above, a prison official's allegedly improper processing of a prisoner's grievances or appeals, without more, is not a sufficient basis for § 1983 liability.  *Ramirez*, 334 F.3d at 860; *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming dismissal of claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).  That is, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation."  *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Ybarra's claims against Momi'i, Agaran, Takenaka, Harrington, and Espinda regarding the processing of his grievances are DISMISSED with leave to amend

for his failure to state a colorable claim for relief.

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with leave granted to amend consistent with this Order on or before July 17, 2020.  If Ybarra elects to file an amended pleading, he must cure the deficiencies in his claims discussed above.  He may not expand his claims beyond those already alleged or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint, and how they are linked to his claims against the named Defendants.

Ybarra must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  If Ybarra elects to file an amended pleading, it must be submitted on the court's prisoner civil rights form and it will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## V.  <u>MOTIONS</u>

Because Ybarra has been granted leave to amend his pleadings, his "Motion for with Leave to Amend," ECF No. 4, is DENIED as moot.

Ybarra's "Motion for Court to Allow Counts 8 thru 14 to be Heard when

Statute of Limitation has Expired," ECF No. 5, is also DENIED at this juncture,

because the Complaint has been dismissed in its entirety and there is no operative

amended Complaint to review.[6]  The Court provides the following legal standard,

however, so that Ybarra can effectively amend his pleadings.

Because § 1983 does not contain its own statute of limitation, the Court

applies Hawaii's two-year statute of limitation for personal injury actions to

Ybarra's claims.  *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191,

1198 (9th Cir. 2014) (holding federal courts apply the forum state's statute of

limitation and state laws for personal injury actions and tolling, to the extent they

are consistent with federal law); *see also Pele Defense Fund v. Paty*, 73 Haw 578,

597-98 (1992) (discussing Hawaii Revised Statutes § 657-7, Hawaii's two-year

"general personal injury" provision).

While state law determines the statute of limitation for § 1983 claims,

"'federal law determines when a civil rights claim accrues.'"  *Azer v. Connell*, 306

F.3d 930, 936 (9th Cir. 2002) (quoting *Morales v. City of L.A.*, 214 F.3d 1151,

1153-54 (9th Cir. 2000) ).  Under federal law, "a claim accrues when the plaintiff

knows or should know of the injury that is the basis of the cause of action."

---

[6] On screening under §§ 1915(e) or 1915A(a), the Court limits its review to the operative complaint and may not consider facts presented in briefs or extrinsic evidence.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (discussing analogous review under Rule 12(b)).

*Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).  Ybarra's claims that allegedly occurred *before* he was released from HCF in 2016, apparently accrued in or about 2015, when he began grieving the alleged denial of more surgery.[7]

Although HRS § 657-13 tolls the limitation period for prisoners who are incarcerated for a term less than life, Ybarra was released from HCF between April 2016 and April 2019, thus, it does not operate to toll his 2014-2016 claims.[8] Moreover, the statute does not toll suits against prison officials, as named here.

A court may equitably toll the statute of limitation "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004).  Equitable tolling

---

[7] This date likely governs the accrual of Ybarra's 2019 and 2020 claims, because he was already grieving the denial of additional surgery *before* he was released on parole.

[8] Section 657-13 states:

If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, either:

(1) Within the age of eighteen years;
(2) Insane; or
(3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;

such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

HRS § 657-13 (West)

is generally appropriate in § 1983 cases where there is "timely notice, [lack] of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Donoghue v. Orange Cty.*, 848 F.2d 926, 931 (9th Cir. 1987) (citing *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983)).  In Hawaii, equitable tolling can toll a statute of limitations if the plaintiff demonstrates "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way." *Office of Hawaiian Affairs v. State*, 133 P.3d 767, 789, 110 Haw. 338, 360,(2006) (citations and internal quotation marks omitted).  Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations.  *Id.*  The Court makes no ruling on whether Ybarra's addiction is sufficient to equitably toll the applicable statute of limitation.

## VI.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1) for Ybarra's failure to state a colorable claim for relief.

(2) Ybarra's "Motion for with Leave to Amend," ECF No. 4, and "Motion for Court to Allow Counts 8 thru 14 to be Heard when Statute of Limitation has Expired," ECF No. 5, are DENIED.

(3) Ybarra may file an amended pleading on or before July 17, 2020. Failure to file a timely amended pleading that cures the deficiencies in the Complaint may result in dismissal of this action with prejudice and without further notice and incur a strike pursuant to 28 U.S.C. § 1915(g).

(4)  The Clerk is DIRECTED to send Ybarra a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to amend his pleadings.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 22, 2020.



  /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Ybarra v. Mee, et al.*, No. 1:20-cv-00167 LEK-WRP; /Scrng '20 Ybarra 20-167 lek (8Am. grievs, spvr liab., SOL)

21