IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PEDRO NATIVIDAD YBARRA, III, #A0189542, | ) ) ) | CIV. NO. 20-00167 LEK-WRP |
| Plaintiff, | ) ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT AND ORDER TO SHOW CAUSE |
| vs. | ) ) | |
| CAROLINE MEE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT AND ORDER TO SHOW CAUSE

Before the court is pro se Plaintiff Pedro Natividad Ybarra, III's First

Amended Complaint ("FAC").  ECF No. 8.[1]  Ybarra alleges that Defendants prison

officials[2] violated his civil rights under the Eighth and Fourteenth Amendments by

denying him adequate medical care between 2014-2016, and again in 2019 to the

present and denying grievances regarding this alleged denial of adequate medical

care.

---

[1] Numbering and pagination used for filed documents by the Federal Judiciary's Case Management/Electronic Case Files ("CM/ECF").

[2] Ybarra names Hawaii Department of Public Safety Corrections Health Administrator Dr. Caroline Mee and Director Nolan Espinda; Halawa Correctional Facility ("HCF") Warden Scott Harrington, Administrators Marieta Momi`i, Tina Agaran, Gavin Takenaka, and Wesley Munn; HCF medical staff Dr. Deane Hatakayama, Dr. Sisar Paderes, Dr. Miriam Chang, Dr. Barney Toyama, Dr. John Frauens, Nurse Debra Karraker, and Nurse Practitioner Courtney Tanigawa in their official and individual capacities.

For the following reasons, the FAC is DISMISSED with leave granted to amend claims that are dismissed without prejudice on or before October 5, 2020, pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a). Claims dismissed herein with prejudice are NOT subject to amendment.

**If** Ybarra elects to file an amended pleading, he is ORDERED TO SHOW CAUSE in writing explaining why his claims are not time-barred.

## I. <u>STATUTORY SCREENING</u>

The court is required to screen all prisoner pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam) (citation omitted). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is

"plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.* (citation omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678-79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. BACKGROUND

Ybarra again asserts two separate sets of claims.  The first, Counts I-VII,[3]

detail incidents that allegedly occurred at HCF from April 2019 until his release on

parole or about June 21, 2020.  *See* FAC, ECF No. 8 at #86-92; *see* Notice of

Change of Address, ECF No. 9.  The second set of claims, Counts VIII-XIV, relate

to incidents that allegedly occurred at HCF between 2014-2016.  *Id.* at #93-99.

### A.    2019-2020 Claims:  Counts I-VII

When Ybarra reentered HCF in April 2019, he sought treatment for severe

pain in his lower back and neck that he had experienced since an assault in

December 2013, by an inmate at the Oahu Community Correctional Center

("OCCC").  Ybarra had sought treatment for his injuries and pain at HCF in 2015-

2016, before his release on parole.

Dr. Hatakayama examined Ybarra on June 12, July 13, and December 9,

2019.  *See* FAC, ECF No. 8 at #88 (Count III).  Ybarra told Dr. Hatakayama that

his private neurosurgeon, Dr. Jon Graham, needed a recent MRI[4] scan to determine

whether surgery was needed.  Ybarra told Dr. Hatakayama that he was unable to

_____

[3] Because Ybarra stopped numbering his claims after Count III, the Court consecutively numbers them from I-XIV.

[4] MRI stands for magnetic resonance imaging, which produces detailed images of organs and tissues.  https://www.medicalnewstoday.com/articles/146309.

undergo an MRI, however, unless he is "knocked out with medicine by a professional." *Id.* at #87.[5]  Dr. Hatakayama prescribed Ybarra pain medication, but Ybarra alleges that this was intended to "hide" his symptoms and cause him to relapse into opioid addiction.  *Id.* at #90-93, 95-98.  Dr. Hatakayama did schedule Ybarra for MRIs, but apparently did not authorize sedation for the procedure. Ybarra alleges that Nurse Karraker, who allegedly had denied him sedation before an MRI in 2015 or 2016, did so again in 2019.  *Id.* at #89 (Count IV).  Ybarra refused to have an MRI unless he was completely sedated.

Ybarra filed grievances regarding his back pain, the denial of general sedation during, and the resulting delay or denial of surgery.  Defendants Momi'i denied his first step grievance, Agaran denied his second step grievance, and Takenaka denied his third step grievance.  *Id.* at #90-#92 (Counts V-VII).  Ybarra alleges that HCF Warden Harrington is ultimately responsible for his pain and suffering because he knew or should have known about the denial of sedation and resulting delay in surgery through his overall supervision of the grievance process. *Id.* at #87 (Count II).  Finally, Ybarra wrote DPS Corrections Health Administrator Dr. Mee, to inform "her of the lack of adequate medical care" that he allegedly

---

[5] Ybarra released his medical records to HCF, including previous MRI scans, from Dr. Graham and from The Queen's Medical Center ("QMC").

received at HCF, but she did not respond.  *Id.* at #11 (Count I).

Ybarra alleges that Dr. Mee, Warden Harrington, Dr. Hatakayama, Karraker, Momi'i, Agaran, and Takenaka violated the Eighth Amendment by failing to ensure he received sedation before having an MRI, which in turn, allegedly delayed surgery and caused him continuing pain and numbness in his left leg.

## B.   2013-2016 Claims:  Counts VII-XIV

Ybarra was assaulted on December 6, 2013, at OCCC.  *See id.* at #95.  When he transferred to HCF in April 2014, he was repeatedly treated for his injuries and back pain by Drs. Paderes, Chang, Toyama, Frauens,[6] and NP Tanigawa.  *See id.* at #93-#99.  He alleges that they examined him, ordered x-rays, noted that he had no broken bones, prescribed him pain medication, and recommended MRIs, but did not prescribe full sedation for these scans.  He received knee surgery, but apparently was never prescribed surgery for his back.  He alleges that he became addicted to opioids during this time, although he previously said that he became an opioid addict *after* his release from HCF in 2016.  *See* Mot., ECF No. 5, at #45.  In 2015 or 2016 Ybarra wrote former DPS Corrections Health Administrator Mun regarding this alleged lack of medical care.  He also filed grievances, but says that former HCF Warden Espinda ignored them.  Ybarra was paroled in April 2016.

---

[6] Dr. Frauens is an orthopedic surgeon.

Ybarra seeks "lifetime maintenance and medical bills for 3 areas of injury," compensatory damages for "3 areas of injury," punitive damages against each Defendant, and expungement of his felony record.  *Id.* at #100.

### III.  DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

A.      **Eighth Amendment Claims**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Id.*  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.* (internal quotations omitted).

"Deliberate indifference is a high legal standard." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).  Inadvertent failures to provide adequate medical care, negligence, medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are insufficient to constitute an Eighth Amendment violation. *Gamble*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

## 1.      *Dr. Hatakayama and Karraker*

Ybarra's severe pain required medical attention from numerous physicians and nurses, which is sufficient to state an objectively serious medical need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  Ybarra fails to allege sufficient facts demonstrating that Dr. Hatakayama or Karraker acted with "deliberate indifference" to his serious medical needs, however. *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007).

Karraker allegedly denied Ybarra sedation for the MRI and failed to offer him an "open" MRI scan to alleviate his anxiety.  Ybarra does not allege that Karraker, as a nurse, had the independent authority to order such sedation, or that

she purposely countermanded Dr. Hatakayama's instructions for such sedation.

Nor does Ybarra state that an open MRI scanner was available and Karraker denied

it.  Rather, Ybarra only says that he refused an MRI because Karraker would not

sedate him.  This is insufficient to state a claim for deliberate indifference against

her.

Dr. Hatakayama examined Ybarra at least three times, reviewed his medical

records from QMC, Dr. Graham, and HCF, treated his pain, knew of Ybarra's

susceptibility to opioid addiction and claustrophobia, and nonetheless ordered MRI

scans without prescribing him general sedation.  In light of Ybarra's repeated

statements that he is susceptible or is currently addicted to opioids, and his

previous medical history at HCF showing that five other doctors had withheld such

sedation, suggests that Dr. Hatakayama decided that general anesthesia was not

indicated for Ybarra.  Although Ybarra clearly disagrees with this decision, as

alleged in the FAC, this represents a difference of opinion between Ybarra and

Dr. Hatakayama, which is not actionable under the Eighth Amendment.  *See Snow*,

681 F.3d at 987.

Moreover, Ybarra does *not* state that Dr. Graham, Dr. Hatakayama, or any

other physician that he names told him that he required surgery.  Rather, he states

that Dr. Graham wanted a recent MRI to determine whether surgery was necessary,

and Dr. Hatakayama prescribed this procedure at HCF.  "To show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to the plaintiff's health.'"  *Id.* at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996)).  Standing alone, Ybarra fails to state facts that Dr. Hatakayama acted with deliberate indifference to his serious medical needs.

Ybarra's Eighth Amendment claims against Dr. Hatakayama and Karraker in Counts III and IV, fail to state a claim and are DISMISSED again without prejudice

### 2.   *Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa*

Ybarra alleges that Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa  failed to provide him adequate medical care for his back injury in 2014-2016.  Ybarra again fails to allege facts that plausibly suggest that these Defendants were deliberately indifferent to his injuries.  Rather, Ybarra alleges that four physicians, including an orthopedist, and a nurse practitioner, regularly examined him, prescribed him pain medication, took x-rays, and approved at least one surgery.   These facts do not show that these Defendants were "subjectively aware that serious harm [was] likely to result from a failure to provide" him a

general anesthetic during an MRI scan to determine whether surgery would be beneficial. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002). Instead, it appears that Ybarra disagreed with these four physicians' decisions declining to authorize general anesthesia before an MRI.

Ybarra fails to state a colorable Eighth Amendment claim against Drs. Paderes, Chang, Toyama, Frauens, and NP Tanigawa and these claims are DISMISSED again with leave granted to amend.

### 3. *Supervisory Liability: DPS Health Administrators Dr. Mee and Mun, and HCF Wardens Harrington and Espinda*

"Vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding supervisor is liable under § 1983 only on a showing of personal involvement in the constitutional deprivation or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. That is, supervisory officials "cannot be held liable unless they themselves" violate a constitutional right. *Id.* at 683.

Supervisors "can be held liable for: 1) their own culpable action or inaction

in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). A plaintiff can state a claim by showing that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991); *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Although Ybarra wrote DPS Health Administrators Dr. Mee and Mun about the alleged denial of surgery or other medical care, he does not explain what role they played in Drs. Hatakayama, Paderes, Chang, Toyama, Frauens, NP Tanigawa's and Karraker's decisions regarding Ybarra's medical care, need for general sedation during an MRI, or need for surgery. He does not allege that they failed to train these medical providers or instituted an unconstitutional policy that prevented them from providing Ybarra medical care. "[A] defendant may not be held liable under § 1983 merely because [they] had certain job responsibilities."

13

*Hernandez v. Aranas*, 2020 WL 569347, at *4 (D. Nev. Feb. 4, 2020) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Ybarra alleges that Warden Harrington "is responsible for systamatic [sic] lapses in the screening of my grievances, even if he delegates certain of these administrative responsibilities elsewhere, he is still responsible." FAC, ECF No. 8 at #87. He suggests the same claim against ex-Warden Espinda, but alleges even less in support of this allegation. *Id.* at #94. An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987). Ybarra points to no policy or procedure that Harrington or Espinda implemented that unconstitutionally denied him medical care.

Ybarra fails to allege sufficient facts showing that Dr. Mee, Mun, Harrington, or Espinda are personally liable for his claims. *See Iqbal*, 556 U.S. at 676-77; *Jones v. Comty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" to state claim). As such, Ybarra's supervisor liability claims against Dr. Mee, Mun, Harrington, and Espinda are DISMISSED with prejudice because granting further leave to amend appears futile.

**B.     Due Process:  Grievances**

Ybarra alleges again that Defendants Momi'i, Agaran, and Takenaka

violated his rights to due process when they denied his grievances and appeals in

2019 regarding the alleged denial of surgery, and alleges that Wardens Harrington

and Espinda failed to properly monitor the HCF grievance process.

To the extent that Ybarra alleges that Harrington or Espinda failed to prevent

or investigate allegedly systematic problems with HCF's grievance procedures or

policies, he has no constitutional right to a prison grievance system.  *See Ramirez*

*v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640

(9th Cir. 1988).  And alleged violations of a state procedure do not give rise to

§ 1983 claims.  *Silva v. Gregoire*, 2007 WL 1814073 at *6 (W.D. Wash. 2007).

Moreover, simply "[r]uling against a prisoner on an administrative

complaint does not cause or contribute to the violation."  *George v. Smith*, 507

F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another

guard beats a prisoner violates the Constitution; a guard who rejects an

administrative complaint about a completed act of misconduct does not."); *see also*

*Ramirez*, 334 F.3d at 860 (holding improper processing of a prisoner's grievances

or appeals is insufficient for § 1983 liability); *Shallowhorn v. Molina*, 572 F.

App'x 545, 547 (9th Cir. 2014) (affirming dismissal of claims against defendants

who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860).

Ybarra's due process claims against Momi'i, Agaran, Takenaka, Harrington, and Espinda are DISMISSED with prejudice because granting further leave to amend appears futile.

## IV.  STATUTE OF LIMITATION

When the Court dismissed Ybarra's original Complaint with leave to amend, it also denied his "Motion for Court to Allow Counts 8 through 14 to be Heard when Statute of Limitation has Expired."  Mot., ECF No. 5.  Ybarra argued that any statute of limitation on his claims should be equitably tolled, because he became addicted to opioids when he was released from HCF in 2016.  *See* Order, ECF No. 7 at #72;

16

The Court provided Ybarra the applicable legal standards regarding the applicable statute of limitation, and notified him that if he elected to amend his pleadings he should address the issue in light of those.  *Id.* (explaining that Hawaii Revised Statutes § 657-7, provides two-year statute of limitation for federal civil rights claims in Hawaii) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) and *Pele Defense Fund v. Paty*, 73 Haw 578, 597-98 (1992)).  Ybarra was notified, however, that "'federal law determines when a civil rights claim accrues.'" *See id.*, (quoting *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) and *Morales v. City of L.A.*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).  And that, under federal law, "a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).  Ybarra was informed that it appeared that *all* of his claims accrued in 2015, when he began grieving the alleged denial of surgery. *See id.* at #73 and n.8.

The Court further explained that, although HRS § 657-13 tolls the limitation for prisoners who are incarcerated for a term less than life, Ybarra was *not* incarcerated between April 2016 and April 2019, and it does not toll suits against

prison officials.[7]

Finally, Ybarra was informed that equitable tolling can "prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice," *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004), but such tolling is appropriate only where there is "timely notice, [lack] of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff," *Donoghue v. Orange Cty.*, 848 F.2d 926, 931 (9th Cir. 1987) (citation omitted).  In Hawaii, equitable tolling applies if the plaintiff demonstrates "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way."  *Office of Hawaiian Affairs v. State*, 133 P.3d 767, 789, 110 Haw. 338, 360,(2006) (citations and internal quotation marks omitted).  Extraordinary

---

[7] Section 657-13 states:

If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, either:

(1) Within the age of eighteen years;
(2) Insane; or
(3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;

such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

HRS § 657-13 (West)

circumstances are circumstances beyond the control of the complainant that make it impossible to file a complaint within the statute of limitation.  *Id.*

Ybarra ignored the Court's instructions to address this issue in the FAC.  In light of Ybarra's ability to grieve his claims at HCF in 2015-2016, his release from prison for three years, his filing immediate grievances when he returned to HCF in 2019, his admission that he was seeing a private neurosurgeon while on parole, and his filing *two* federal actions in 2020 while incarcerated and allegedly addicted to opioids,[8] it does not appear that his addiction was an extraordinary condition that prevented him from diligently pursuing his claims since 2015.

IF Ybarra elects to file a second amended pleading, he is ORDERED TO SHOW CAUSE in writing why he is otherwise entitled to equitable tolling and why his claims are not all barred by the applicable statute of limitation.

## V.  <u>LEAVE TO AMEND</u>

The First Amended Complaint is DISMISSED with leave granted to amend consistent with this Order on or before October 5, 2020.  If Ybarra elects to file an amended pleading he must cure the deficiencies in those claims that are dismissed without prejudice.  He may not expand his claims, add new claims without

---

[8] Ybarra filed *Ybarra v. Mee*, No. 1:20-cv-00079 JMS-KJM, on 02/18/2020.

explanation how they relate to his original claims, and link all claims to named

Defendants.  Ybarra may not reallege claims dismissed herein with prejudice.

Ybarra must comply with the Federal Rules of Civil Procedure and the Local

Rules for the District of Hawaii.  An amended pleading must be submitted on the

court's prisoner civil rights form; it supersedes all preceding complaints.  *See*

*Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015);

LR99.7.10.  Defendants not renamed and claims not realleged will be deemed

voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir.

2012) (en banc).

## VI.  CONCLUSION

(1)  The First Amended Complaint is DISMISSED pursuant to 28 U.S.C.

§§ 1915(e)(2) & 1915A(b)(1) for Ybarra's failure to state a colorable claim for

relief.  Specifically, Ybarra's claims alleged against Defendants Dr. Caroline Mee,

Wesley Mun, Warden Scott Harrington, former Warden Nolan Espinda, Marieta

Momi`i, Tina Agaran, and Gavin Takenaka are DISMISSED WITH PREJUDICE.

Ybarra's claims alleged against Defendants Dr. Deane Hatakayama, Debra

Karraker, Dr. Sisar Paderes, Dr. Miriam Chang, Dr. Barney Toyama, Dr. John

Frauens, and Courtney Tanigawa are DISMISSED WITHOUT PREJUDICE, and

leave granted to amend.

(2) Ybarra may file an amended pleading on or before October 5, 2020.

Failure to file a timely amended pleading that cures the deficiencies in the

Complaint will likely result in automatic dismissal of this action without further

notice and Ybarra may incur a strike pursuant to 28 U.S.C. § 1915(g).

(3)  Ybarra is ORDERED TO SHOW CAUSE on or before October 5, 2020,

explaining why his claims are not time-barred.

(4)  The Clerk is DIRECTED to send Ybarra a prisoner civil rights

complaint form so that he may comply with the directions of this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 10, 2020.



      /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Ybarra v. Mee, et al.*, No. 1:20-cv-00167 LEK-WRP; /Scrng '20 Ybarra 20-167 lek (dsm FAC 8A grievs spvr liab SOL)